IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

FILED
DEC 06 2018
Clerk, U S District Court
District Of Montana
Billings

| | |
|---|---|
| VICTOR CHARLES FOURSTAR, JR., <br><br> Plaintiff, <br><br> vs. <br><br> MONTANA GOVERNOR STEVE BULLOCK, et al., <br><br> Defendants. | Cause No. CV 18-36-GF-SPW <br><br> ORDER |

## I. Screening

Plaintiff Fourstar filed a complaint in this matter on February 13, 2018. At that time, he was a prisoner. *See* Compl. (Doc. 2) at 5 ¶ I. He is also proceeding in forma pauperis. *See* Mot. to Proceed In Forma Pauperis (Doc. 1); Order (Doc. 17). The Court must review the complaint to determine whether it fails to state a claim on which relief may be granted. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(a).

Fourstar is also self-represented. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal quotation marks and citation omitted). Courts must briefly explain deficiencies that may be cured by

1

amendment, *see Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012), but if a claim cannot be cured by amendment, "the court *shall* dismiss" it, 28 U.S.C. § 1915(e)(2) (emphasis added).

## II. Deficiencies in Complaint

The complaint names over 33 defendants and scatters allegations over a wide variety of situations. The Court will address its claims seriatim.

### A. Funding Cut to College Programs

Fourstar claims Governor Bullock and others "discriminatorily targeted non-Caucasian Italian-American Studies course at College of Missoula (consolidated with Paralegal Studies Program and Culinary Arts Program) for termination through a cut in . . . funding . . . without authority." As a result, he says, he is not able to attend the Paralegal Studies Program, enjoy vocational rehabilitation, or enjoy his full share of the *Cobell* settlement. *See* Compl. (Doc. 2) at 13 ¶ III(A)(4), 14 ¶ IV, 16.

There was no "Italian-American Paralegal Studies Program." Fourstar links the two because funding for each was cut. This does not support an inference that a defendant engaged in invidious ethnic discrimination in violation of federal law. Further, a prospective student's interest in attending a particular degree program does not confer "a legitimate claim of entitlement" to the continuation of that program, *see Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972),

2

so Fourstar cannot claim he was deprived of a property interest without due process.

A complaint's allegations must "permit the court to infer *more* than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (emphasis added). These allegations do not permit an inference of *any* misconduct. They fail to state a claim on which relief may be granted.

**B. Claims by Other Persons**

Fourstar purports to make claims on behalf of two other persons. *See* Compl. at 23–26, 32–36. He is not admitted to the Bar of this Court and is not an attorney at law. He cannot litigate a claim for another person. *See* 28 U.S.C. § 1654; D. Mont. L.R. 83.8(a) (Dec. 1, 2017). These allegations fail to state a claim on which relief may be granted.

**C. Conditions of Confinement Claims**

The following allegations arise from two separate, brief periods of detention on two serial petitions to revoke Fourstar's federal supervised release. Pending hearings and disposition, he was held at Crossroads Correctional Center in May 2017 and again in November 2017. He asserts violations of his rights under the "1st, 5th, 8th, 10th, and 14th Amendments of United States and Montana Constitutions." *See* Compl. at 17.

### 1. Medical and Dental Needs

Fourstar alleges that Corrections Corporation of America and other individual defendants are liable for failing to meet his medical needs for surgery on both knees; knee braces and a cane; psychiatric counseling; a Wellbutrin prescription; and tuberculosis screening and treatment for his "TB exposure & symptoms." He also contends defendants failed to provide care "for Fourstar's severe dental needs and pain." Compl. at 17–20.

As persons responsible for Fourstar's custody under the authority of a federal warrant and a federal judge's order of detention, all defendants were acting under color of federal law. If Fourstar has a cause of action at all, it arises under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), the federal sometime-analogue to 42 U.S.C. § 1983. But unlike the alleged conduct in violation of the Fourth Amendment in *Bivens*, the defendants' alleged conduct here is "of a kind that typically falls within the scope of traditional state tort law." *Minecci v. Pollard*, 565 U.S. 118, 131 (2012). *Bivens* does not provide a remedy. *See id.* at 125–26; *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 70–73 (2001); *see also Ziglar v. Abbasi*, __ U.S. __, 137 S. Ct. 1843, 1857–58 (2017). These allegations fail to state a claim on which relief may be granted.

### 2. Right to Consult with Counsel

Fourstar alleges Defendant Bush failed to provide "confidential attorney-

client communications/phone calls to his attorney," Dwight Schulte, resulting in denial of his right to a full and fair defense. Compl. at 20. The Court will assume, for present purposes, that a *Bivens* remedy is available.

As noted, Fourstar claims he was held at Crossroads in May 2017. Schulte represented Fourstar from April 20, 2017, through the final revocation hearing on June 1, 2017. *See* Order (Doc. 200); Minutes (Doc. 205), *United States v. Fourstar*, No. 4:02-CR-52-DLC. During this period of time, the only violation alleged in the petition to revoke Fourstar's supervised release was his failure to register as a sex offender. *See* Pet. (Doc. 123) at 1–2, *Fourstar*, 4:02-CR-52-DLC. At the June 1 hearing, Fourstar's supervised release was revoked, but when he agreed to register as a sex offender, he was sentenced to time served and was released. *See* Minutes (Doc. 205); Revocation Judgment (Doc. 207) at 1, *Fourstar*, 4:02-CR-52-DLC.

The record in the criminal case defeats any inference that Fourstar did not have a full and fair defense. These allegations fail to state a claim.

### 3. Religious Discrimination

Fourstar contends that Defendants Corrections Corporation of America and Bryan O'Keefe, the chaplain at Crossroads, denied him "weekly sweat lodges, weekly pipe ceremony, [and] weekly outside community spiritual advisor." Compl. at 18. He claims they caused him to suffer "a loss of identity as a Native

5

American" and "severe emotional pain and duress" as well as impeding his rehabilitation. *Id.*

For three reasons, Fourstar cannot pursue this claim under *Bivens*. First, the Supreme Court has never recognized a First Amendment claim under *Bivens*. *See Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012). Second, a roughly comparable and perhaps even superior remedy is likely available under state law. *See, e.g., Walker v. State*, 2003 MT 134 ¶¶ 72–75 (Nelson, J.); Mont. Const. Art. II, § 4; *Dorwart v. Caraway*, 2002 MT 240 ¶ 48.

Third, the *Bivens* Court perceived a need to provide a money-damages remedy for Fourth Amendment violations because Congress had not created one. *See, e.g., Bivens*, 403 U.S. at 395–97. Here, however, Congress has expressly provided a means of vindicating religious rights. The Religious Land Use and Institutionalized Persons Act (RLUIPA) provides a cause of action against state or federal officials as well as "any other person acting under color of Federal law." 42 U.S.C. § 2000cc-5(4)(B). The Supreme Court has long recognized that private parties may act under color of Federal or state law, and the Ninth Circuit holds that the phrase "acting under color of State law," *see* § 2000cc-5(4)(A)(iii), means the same thing under RLUIPA that it means under § 1983. *See Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 922 (9th Cir. 2011). There is no apparent reason to conclude the phrase "acting under color of Federal law," *see* § 2000cc-

5(4)(B), means something different under RLUIPA than it means under *Bivens*. Therefore, the concerns that persuaded the *Bivens* Court to create a remedy for Fourth Amendment violations are absent here. Congressional provision of a statutory remedy to vindicate religious exercise and religious freedom obviates the need for a judicially-created *Bivens* damages remedy to vindicate First Amendment rights.

These allegations fail to state a claim on which relief may be granted.

### 4. "Native American" Media vs. "Caucasian" Media

Fourstar alleges that Defendant Fey, the Crossroads librarian, discriminated against him by "refusing and failing to order" the Fort Peck Journal or other "Native American media" but routinely "providing" such "Caucasian media" as the Great Falls Tribune.[1] Compl. at 20. As with his claim of religious discrimination, Fourstar claims Fey caused him to suffer "a loss of identity as a Native American" and "severe emotional pain and duress" as well as impeding his rehabilitation. *Id.*

The Court will assume, for present purposes, that a *Bivens* remedy might lie for violation, by private persons acting under color of Federal law, of pretrial detainees' First Amendment rights to free association, free speech or expression, or

---

[1] The Fort Peck Journal is published in Wolf Point, a city of about 3,000 people located about 300 miles from Crossroads. The Great Falls Tribune is published in Great Falls, a city of about 58,000 people located about 85 miles from Crossroads. *See* Fed. R. Evid. 201.

free press, or of their Fifth Amendment rights to equal protection of the laws.

Even so, Fourstar does not say he ordered or was prevented from ordering delivery of the Fort Peck Journal. He alleges only that the librarian did not order it. The Court is not aware of any law requiring libraries in local jails to purchase newspapers for indigent inmates or to ensure that any available newspapers represent an appropriate mix of constituencies. And Fourstar's ethnic characterization of the respective newspapers is dubious. Magazines, for instance, tend to address particular interests, but local newspapers address interests shared by a geographical community. Fourstar's desire for hometown news is as understandable and as legitimate as any other inmate's, but it is not more legitimate. These allegations fail to state a claim on which relief may be granted.

### 5. Retaliation

Finally, Fourstar alleges he "[s]poke with defendant(s) about issues. Issues not corrected. Rather I was retaliated against by pulling me out of J-Pod and placing me in H-Pod where sex offenders can not co-exist with other inmates." Compl. at 22 ¶ D(3).

Unlike all his other claims, Fourstar does not say when the incident occurred, he does not identify a single defendant, he does not describe how he was harmed, and he does not request any form of relief. Nor does he allege he exhausted this claim, as he does with his other claims. In view of these omissions,

all of which are unusual in the context of the remainder of the complaint, the Court finds he does not claim a violation of his right to petition for redress of grievances or to speak out on issues important to him. These allegations fail to state a claim on which relief may be granted.

### D. Medical Services and Vocational Rehabilitation

#### 1. Tribal Officials

Fourstar alleges that Defendants Bear, Lance Fourstar, and Failing, who are all tribal officials or employees, discriminated against him by scheduling medical or vocational-rehabilitation appointments for days on which he had court appearances and by failing to provide medical or vocational-rehabilitative services. He also claims Bear assaulted him and that another tribal-official defendant, Azure, failed to respond appropriately to a related grievance Fourstar filed. *See* Compl. at 27–28, 29.

Tribal officials acting under color of tribal law cannot be sued under 42 U.S.C. § 1983 or *Bivens*. *See, e.g., Pistor v. Garcia*, 791 F.3d 1104, 1114–15 (9th Cir. 2015); *R.J. Williams Co. v. Fort Belknap Housing Auth.*, 719 F.2d 979, 982 (9th Cir. 1983). Violations of the Indian Civil Rights Act may be remedied only by way of a petition for writ of habeas corpus. *See* 25 U.S.C. §§ 1302(a), 1303. Even assuming Fourstar exhausted his tribal remedies, he is not eligible for this relief in this action because he is not in tribal custody. *See Tavares v. Whitehouse,*

851 F.3d 863, 865–66 (9th Cir. 2017); *Moore v. Nelson*, 270 F.3d 789, 791–92 (9th Cir. 2001). These allegations fail to state a claim on which relief may be granted.

### 2. State Official

Fourstar alleges a state official unlawfully discriminated against him by telling him he should contact the tribal vocational rehabilitation program because he was living on the Reservation. *See* Compl. at 28–29. As Fourstar's other allegations make clear that vocational rehabilitation services were available to Fourstar through tribal officials, these allegations fail to support any inference of invidious discrimination. *See Iqbal*, 556 U.S. at 679. These allegations fail to state a claim on which relief may be granted.

### E. Social Security Administrative Law Judge

Fourstar claims an administrative law judge failed to provide a hearing date or appeal "until after Fourstar was arrested for a violation of federal supervised release on October 10, 2017." Compl. at 29. The Supreme Court does not recognize a *Bivens* action against officials of the Social Security Administration or administrative law judges. *See Schweiker v. Chilicky*, 487 U.S. 412, 414 (1988). Fourstar's requests for injunctive relief are moot, because he cannot receive retroactive benefits while he is in prison. *See Fowlkes v. Thomas*, 667 F.3d 270, 271–72 (2d Cir. 2012) (quoting 42 U.S.C. § 1383(b)(8)(A)(i)). These allegations fail to state a claim on which relief may be granted.

**F. Claims Regarding Revocation of Supervised Release**

Fourstar contends that Defendants Eliason, Christensen, Clark, Youpee, Summers, and unknown Assistant United States Attorneys and Roosevelt County deputies unlawfully imposed and modified conditions of supervised release and unlawfully pursued and effected revocation of Fourstar's supervised release. *See* Compl. at 39–50. As explained in *Fourstar v. Eliason*, No. 4:16-CV-113-GF-SPW (filed contemporaneously with this Order), none of these allegations supports an inference that a defendant violated any law. These allegations fail to state a claim on which relief may be granted.

**G. Arrest on September 16–17, 2017**

Fourstar alleges that, on or about September 17, 2017, he was arrested by Enrique Morales, a police officer for the City of Wolf Point. Fourstar alleges Morales lacked authority to arrest him and "did knowingly, willfully, and negligently use excessive force" in arresting him. He also alleges that Morales "negligently failed" to take Fourstar to the emergency room for treatment of his "swollen and blackened right eye, swollen and bleeding right cheek, bruised back and ribs, lumps to back of Fourstar's head with prolonged headaches and feelings of nausea/concussion [and] vomiting." Fourstar states that he was released from tribal jail on September 20, 2017. *See* Compl. at 38–39.[2]

---

[2] At the revocation hearing on October 25, 2017, Judge Christensen found that Fourstar

11

The Fort Peck Tribes authorized Morales to arrest Fourstar:

**State and local law enforcement officials authorized to make arrests.**

(a) All law enforcement officials vested with general law enforcement authority by the State of Montana, or by any County or City within the boundaries of the Fort Peck Reservation and approved by Executive Board on recommendation of the safety committee, are hereby authorized to arrest Indians on any highway on the Reservation or within the boundaries of the cities of the Reservation for violations of the Tribal Code of Justice. Each jurisdiction shall from time to time submit the names of new law enforcement officials to the safety committee for approval.

(b) Upon arresting any Indian as authorized by this Section, such law enforcement officials shall promptly deliver the individual to the Tribal Court or to the appropriate tribal law enforcement officers for action under tribal laws.

3 Fort Peck Tribes Comprehensive Code of Justice ("C.C.J.") § 208, *available at* https://fptc.org/comprehensive-code-of-justice-ccoj/ (accessed Dec. 5, 2018); *see also Fort Peck Tribes v. Big Talk*, 3 Am. Tribal Law 356, 357–58 (Fort Peck Ct. Appeals 2001) (Schuster, Ch. J.) (quoting identical provision).

Morales, a city officer vested with tribal authority, arrested a tribal member

---

was cited for and pled guilty to tribal offenses of disorderly conduct and public intoxication and so "committed another federal, state, or local crime" on or about September 16, 2017. *See* Final Revocation Hr'g Tr. (Doc. 245) at 27:4–28:22; Revocation Judgment (Doc. 234) at 1, *Fourstar*, No. 4:02-CR-52-GF-DLC; *see also* 7 Fort Peck Tribes Comprehensive Code of Justice §§ 440, 446, *available at* https://fptc.org/comprehensive-code-of-justice-ccoj/ (accessed Dec. 5, 2018). Assuming Morales used excessive force and/or lacked authority to arrest Fourstar, those facts would not undermine the validity of Fourstar's revocation. *See, e.g., Jackson v. Barnes*, 749 F.3d 755, 759–61 (9th Cir. 2014); *Weilburg v. Shapiro*, 488 F.3d 1202, 1206–07 (9th Cir. 2007); *see also Lascelles v. Georgia*, 148 U.S. 537, 544 (1893) ("The jurisdiction of the court in which the indictment is found is not impaired by the manner in which the accused is brought before it."). Consequently, these allegations are not barred by *Edwards v. Balisok*, 520 U.S. 641, 645, 649 (1997), and *Heck v. Humphrey*, 512 U.S. 477, 486 (1994).

on the Reservation for tribal offenses and took the tribal member to the tribal jail. At all times relevant to Fourstar's complaint, he acted under color of tribal law. As stated above, Fourstar cannot proceed here against a person acting under color of tribal law. *See Pistor*, 791 F.3d at 1114–15. These allegations fail to state a claim on which relief may be granted.

### H. Right to Extradition Hearing

Fourstar claims he had a right to be arrested by tribal rather than state or federal officers and should have had an extradition hearing before he was taken into federal custody on petitions to revoke his supervised release. *See* Compl. at 46–49. But the "bad men" clause of the Fort Laramie Treaty of 1868 does not create an individual right that Fourstar has standing to enforce. As the Eighth Circuit has noted, the "plain language" of the treaty "imposes *an obligation on the tribe* to 'deliver up the wrong-doer to the United States.'" *United States v. Drapeau*, 414 F.3d 869, 878 (8th Cir. 2005) (emphasis in *Drapeau*). The contemporary Tribes have assumed a similar obligation. *See* 3 Fort Peck Tribes C.C.J. § 401. These allegations fail to state a claim.

## III. Opportunity to Amend

The Court has considered whether Fourstar could state a viable claim if given an opportunity to allege additional facts. But missing facts are not the issue. Fourstar mistakenly believes lawful acts are unlawful or seeks relief to which he is

not entitled. None of his allegations can be cured by amendment.

## IV. Conclusion

All allegations of the complaint are dismissed for failure to state a claim on which relief may be granted. As Fourstar was a prisoner when he filed the complaint, its dismissal counts as a strike under 28 U.S.C. § 1915(g). Fourstar is required to pay the full filing fee of $350.00. *See* 28 U.S.C. § 1915(b). Because he was not a prisoner at the time his motion to proceed in forma pauperis was granted, however, the Court will waive the initial partial filing fee under § 1915(b)(1)(A) and (B).

Accordingly, IT IS ORDERED:

1. The complaint (Doc. 2) is DISMISSED WITH PREJUDICE for failure to state a claim on which relief may be granted.

2. The clerk shall enter judgment by separate document.

3. The docket shall reflect that dismissal of this action for failure to state a claim counts as one strike under 28 U.S.C. § 1915(g).

4. The Court CERTIFIES, pursuant to Fed. R. App. P. 24(a)(4)(B), that any appeal from this disposition would not be taken in good faith.

DATED this 6th day of December, 2018.

Susan P. Watters
United States District Judge